IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DEJA HILL, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. _____ |
| | ) |
| THE ARC OF CENTRAL ALABAMA, | ) JURY TRIAL DEMANDED |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT

### STATEMENT OF JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to its general original jurisdiction and under other statutory authority. This is a suit authorized and instituted pursuant to 42 U.S.C. Section 2000e, et seq , known as Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the Pregnancy Discrimination Act ("PDA"). This Complaint alleges sexual harassment and retaliation.

2. This Court has original jurisdiction, pursuant to 28 U.S.C. §1331, as this civil action arises under the laws of the United States cited above. This Court also has original jurisdiction, pursuant to 28 U.S.C. §1343(a); as this civil action seeks to secure the protection of, and redress the deprivation of rights secured by Title VII, providing for injunctive and other relief against discrimination.

3. Venue is proper in this district, pursuant to 28 U.S.C. §1391, as a substantial part of the events or omissions giving rise to the claim occurred in Jefferson County located in this judicial district.

4. Plaintiff has fulfilled all conditions precedent to the institution of this action, as

1

required under Title VII. Plaintiff timely filed a charge of discrimination (Charge No. 420-2019-00962) that was received by the EEOC on January 30, 2019, within 180 days of the occurrence of the latest discriminatory act complained of herein.

5. On July 11, 2019, the EEOC issued a determination letter in which it found reason to believe that Plaintiff was discriminated against in violation of Title VII. See Exh. A.

6. A formal Notice of Right to Sue was received by Plaintiff on August 22, 2019.

## STATEMENT OF THE PARTIES

7. Plaintiff Deja Hill(hereinafter referred to as "Plaintiff" or "Richard") is an African-American female over the age of nineteen (19) years. At all times relevant to this Complaint, Plaintiff was an employee of the Arc of Central Alabama.

8. Defendant The Arc of Central Alabama (hereinafter "Arc"), is an entity subject to suit under Title VII.

## STATEMENT OF THE FACTS

9. Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and affect as if fully set forth herein and further states as follows:

10. Plaintiff is an American woman. At all times relevant to this complaint, Plaintiff was pregnant.

11. Plaintiff began working for the ARC in or near March of 2018. She was a caretaker for two individuals with severe mental disabilities. The gentlemen under Plaintiff's care lived at a house in Homewood, AL, believed to be owned and/or operated by the ARC. Because her job duties took place at this house, Plaintiff's work environment was a small and intimate setting.

12. Towards the end of October, 2018, ARC assigned a man by the name of Charles

Brooks to begin working at the same house as Plaintiff.

13. Plaintiff worked the 12am - 8am shift. Brooks would get to the house around 5am. Immediately, Brooks made Plaintiff feel uncomfortable by the way he would look at her and talk to her in a flirtatious manner. However, Plaintiff did not engage or welcome Brooks' flirts in hopes that he would stop.

14. On or near November 14, 2018, Brooks spent the night at the house although he was not scheduled to work. The two gentlemen under Plaintiffs care were sound asleep and Plaintiff dozed off on the couch. Suddenly, Plaintiff felt someone rubbing her feet and toes. When Plaintiff opened her eyes, it was Brooks. Plaintiff immediately told him to stop touching her and that she was not interested in him and his advances were very unwelcome.

15. Plaintiff was shocked and did not know how long Brooks had been rubbing/touching her feet. Brooks told immediately told Plaintiff not to say anything to anyone. Plaintiff felt both threatened and intimidated by Brooks' demand.

16. Later that day, Plaintiff told a female co-worker who also worked at the house but on a different shift. The female coworker told Plaintiff that Brooks gave her bad vibes as well and she believed he was a pervert. After that conversation with her coworker, Plaintiff did everything she could to avoid Brooks. However, due to the small work environment, Plaintiff still had to see him.

17. During the first or second week of December, 2018, Brooks was made aware that Plaintiff was pregnant. Each time Plaintiff saw Brooks during the week he would ask Plaintiff if he could have sex with her because he wanted some "pregnant pu\*\*y" and "pregnant pu\*\*y was the best pu\*\*y". Every time this happened Plaintiff immediately told him no, to leave her alone, and that he was sexually harassing her. However, Brooks did not stop. In fact, Brooks behavior grew

worse.

18. On or about December 12, 2018, Brooks told Plaintiff that he would pay her $300.00 to have intercourse and also perform oral sex on him. Plaintiff was so disturbed and frightened that she ran into a bedroom, shut the door and pulled a dresser in front of the door to prevent Brooks from coming in behind her. The following day, as Plaintiff was in the kitchen working, she caught Brooks standing very close behind her when she bent over. Brooks was making sexual humping gestures as though the two of them were having sex. Plaintiff immediately told Brooks to back off. Because his behavior was worsening, Plaintiff reported his actions to her supervisor, Jackie Brenton, and told her she could not work in the same home as Brooks. However, Plaintiff was told that she had to keep working with Brooks for the time being because the ARC was short-staffed.

19. The following day after Plaintiff complained about his sexually harassing actions, Brooks confronted Plaintiff at the house when he was not even supposed to be there. Brooks told Plaintiff that he knew Plaintiff told on him and that no one would believe her. Brooks said he was going to make sure that Plaintiff got fired for "lying" on him. Brooks and Plaintiff then began to exchange words in an argumentative manner. Brooks told Plaintiff that he was going to get her and said he was going to call the police on her. Plaintiff immediately called her supervisor and told her what was going on. Plaintiff then left the house for fear of her and her unborn baby's safety.

20. Shortly after she left the house, the police called Plaintiff and asked her to wait at a gas station. They then told Plaintiff that Brooks was attempting to make a complaint against her but that they did not believe him based on his behavior. An ARC supervisor, Audrey, came out to the house and made Brooks leave.

21. That following Monday, December 17th, Plaintiff spoke to human resources about

everything. HR told Plaintiff that there was not much they could do because they were short-staffed but they would allow Plaintiff to move to a different house - the "J-House" - to work. About two or three days later, Plaintiff's supervisor called her and told her they were placing Plaintiff on administrative leave due to the police being called to the house by Brooks.

22. Plaintiff told the Arc that it was not right to place her on leave and why should she be punished when Brooks was harassing her and clearly retaliating by calling the police after he had found out Plaintiff reported him to HR and management. Plaintiff's supervisor, Zandra, failed to address her concerns and instead told Plaintiff that they would let her know when she could come back to work.

23. However, on December 28, 2018, while still on administrative leave, Plaintiff received a letter in the mail terminating her from the Arc. The letter did not state a specific reason for termination. Upon information and belief, Brooks was not terminated and he continued to work for the Arc.

24. Plaintiff was sexually harassed because of her gender and pregnancy. Plaintiff was then retaliated against by Brooks and her employer after engaging in protected activity when she complained of the discriminatory/harassing treatment she was forced to endure.

**COUNTS I and II**
**Sexual Harassment in Violation of Title VII**
**Sexual Harassment in Violation of Pregnancy Discrimination Act (PDA)**

25. Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs with the same force and effect as if fully set out in specific detail herein below.

26. Plaintiff belongs to a protected group as she is female.

27. Plaintiff has been subjected to unwelcome sexual harassment, including sexual

advances and requests for sexual favors through both verbal and physical conduct.

28. As an agent of the Arc, Brooks' sexual harassment consisted of both explicit and implicit demands for sex and sex acts.

29. Plaintiff objected to Brooks' unwelcome sexual advances.

30. The harassment Plaintiff complains of was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment.

31. The unlawful conduct as described above was done with intent, malice and/or reckless disregard and/or deliberate indifference to Plaintiff's federally protected rights.

32. The Arc failed to exercise reasonable care to prevent and promptly correct the sexually harassing behavior of its agent. Furthermore, Plaintiff reported the harassment, thereby taking advantage of any preventive or corrective opportunities in order to avoid harm.

33. The Arc did not have sufficient anti-harassment policies in place and did not widely disseminate or vigorously enforce any anti-harassment policy it may have had.

34. The Arc failed to guard against the misconduct of its agents and failed to take adequate remedial action.

35. The Arc was aware of the hostile and abusive environment, and refused to take appropriate remedial action. The Arc ratified and condoned such hostile and abusive behavior by failing to take appropriate remedial action.

36. As a proximate result, Plaintiff has suffered extreme harm including, but not limited to, injury including, pain, humiliation, mental anguish and suffering.

**COUNTS III and IV**
**Retaliation and Retaliatory Hostile Environment (Title VII)**
**Retaliation and Retaliatory Hostile Environment (PDA)**

37. Plaintiff re-alleges and incorporates by reference paragraphs 9-24 with the same force and effect as if fully set out in specific detail herein below.

38. Plaintiff had a good faith, reasonable belief that Brooks had engaged in sexual harassment. Plaintiff engaged in statutorily protected conduct. Plaintiff made direct complaints of sexual harassment to the Arc.

39. Rather than remediate the issues, Plaintiff was placed on administrative leave. Such adverse employment action was causally related to Plaintiff's complaints of sexual harassment. The Arc was aware of Plaintiff's protected conduct and there was a close temporal proximity between its awareness and the adverse employment action that resulted.

40. After Plaintiff complained about the sexual harassment, she suffered a hostile and retaliatory environment, created by threats, confrontation, police being called on her, being placed on administrative leave, extra scrutiny and suspicion.

41. The retaliatory hostile work environment Plaintiff complains of was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive working environment.

42. As a proximate result, Plaintiff suffered extreme harm and injury including, but not limited to, pain, inconvenience, embarrassment, humiliation, mental anguish and suffering.

### COUNTS V and VI
### Retaliatory Discharge (Title VII)
### Retaliatory Discharge (PDA)

43. Plaintiff re-alleges and incorporates by reference paragraphs 9-24 with the same force and effect as if fully set out in specific detail herein below.

44. Plaintiff had a good faith, reasonable belief that Brooks, an agent of the Arc, had engaged in sexual harassment. Plaintiff engaged in statutorily protected conduct. Plaintiff made direct complaints of sexual harassment to the Arc.

45. Plaintiff immediately faced adversity as a result of her complaints of sexual discrimination/harassment. Indeed, Brooks discovered Plaintiff reported his behavior and came to the house although he was not scheduled to work. Brooks then threatened Plaintiff physically and verbally. Plaintiff, who was pregnant, left the house for fear of her safety and immediately called her supervisor to tell her what was happening. At the same time, Brooks called the police on Plaintiff in an effort get her arrested by making false accusations.

46. Plaintiff was then placed on administrative leave by the Arc.

47. The adverse employment decisions suffered by Plaintiff culminated when she was terminated from her employment with the Arc on or near December 28, 2018, while she was still on administrative leave.

48. Plaintiff had been working for the Arc since March, 2018. Plaintiff did not begin experiencing adverse work conditions until the Arc placed Brooks in the same house with Plaintiff in October, 2018. In December, 2018, Plaintiff reported Brooks' behavior to the Arc as she was being actively sexually harassed. After she reported the behavior, Plaintiff experienced several retaliatory acts that ultimately resulted in her termination. Thereby a causal link exists between Plaintiff's protected expression and the adverse action.

49. Upon information and belief, Brooks was not disciplined or terminated.

50. As a proximate result, Plaintiff suffered extreme harm and injury including, but not limited to, pain, inconvenience, embarrassment, humiliation, mental anguish and suffering.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court will assume jurisdiction of this action, and after trial, provide relief as follows:

1. Issue a declaratory judgment that the employment practices, policies, procedures, conditions, and customs that led to the discrimination by defendant violated Plaintiff's rights as secured by Title VII of the Civil Rights Act of 1964 and the Pregnancy Discrimination Act.

2. Enter an Order requiring the Defendant to make Plaintiff whole by awarding Plaintiff nominal, compensatory and punitive damages.

3. Plaintiff further prays for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses incurred by this litigation.

4. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory and other relief is her only means of securing adequate relief.

## PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE BY JURY

Respectfully submitted,

_____
Samuel Fisher
Sidney M. Jackson
*Attorneys for the Plaintiff*
WIGGINS, CHILDS, QUINN & PANTAZIS, LLC
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203

Telephone: (205) 314-0500
Facsimile: (205) 254-1500

**Notice of Lawsuit and Request for Waiver of Service to Be Sent by Certified Mail to the Following:**

The Arc of Central Alabama, Inc.
215 21ST AVENUE SOUTH
BIRMINGHAM, AL 35205